UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JEREMIAH WILLIAMS CLEM, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 6: 17-227-DCR |
| | ) |
| V. | ) |
| | ) |
| NANCY A. BERRYHILL, Acting | ) **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) **AND ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Jeremiah Williams Clem ("Clem" or "the Claimant") and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner") have filed cross motions for summary judgment. [Record Nos. 11, 13] Clem contends that the administrative law judge ("ALJ") assigned to his case erred by denying claims for disability income benefits ("DIB") and supplemental security income ("SSI"). He requests that the Court direct a finding of disability or that the matter be remanded for further administrative proceedings. The Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed. For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief Clem seeks.

## I.   Procedural History

Clem filed concurrent applications for a period of disability and DIB under Title II of the Social Security Act ("the Act") and SSI under Title XVI of the Act on June 6, 2014. [Administrative Transcript, "Tr.," 188-191] He alleged that he became unable to work on May 31, 2014, due to issues associated with bacterial meningitis. [Tr. 218] His claims were denied

initially and upon reconsideration and, eventually, by ALJ Dennis Hansen following a hearing. [Tr. 10-23] Clem sought review by the Appeals Council, but relief was denied at that level of review as well. [Tr. 1-3] Accordingly, the Claimant has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. Background

Clem completed high school and one year of college. [Tr. 31] He worked in a number of different coal mining positions over a period of 12 years. [Tr. 32, 274] This included working underground as a foreman, a roof bolter, and a "belt man," where he lifted up to 90 pounds. [Tr. 32-33] Clem reported in his application for benefits that he was laid off due to a downturn in the economy in June 2013. [Tr. 218] However, he testified during his hearing before the ALJ that he quit his job because of low back pain. [Tr. 35]

Clem lives with his parents and his two children. [Tr. 35-36] Besides low back pain, Clem reports that he has diabetes and gets sick frequently following removal of his spleen. [Tr. 39] He reports that he suffered a bout of bacterial meningitis in 2014 and, since then, he has difficulty with comprehension. *Id.* Clem also has a history of alcoholism, but reports having been sober since 2014. [Tr. 42]

The Claimant's pertinent medical history is summarized as follows: Clem was taken to his local emergency department in May 2014 after he became disoriented and agitated. [Tr. 283] He was stabilized and transferred to the University of Kentucky Medical Center, where he eventually was diagnosed with meningitis. [Tr. 370-402] Initial scans of his brain appeared normal, but an MRI later revealed that he had suffered multiple small strokes. [Tr. 471] Following hospitalization of approximately twenty days, Clem participated in outpatient physical therapy. [Tr. 460] During that time, he worked to address strength and balance

deficits. By August 2014, Clem's neurologist reported that he did not have any residual deficits from the strokes and that his muscle strength was five-out-of-five. [Tr. 471-72] The doctor noted, however, the Clem gave poor effort during muscle testing. [Tr. 472]

Clem saw Dr. Greg Dye for treatment of low back pain in October 2014. Diagnostic imaging revealed mild degenerative changes of the lumbar spine. [Tr. 619] Dye diagnosed Clem with lumbosacral spondylosis without myelopathy and prescribed Mobic, which helped improve his symptoms. [Tr. 619, 628, 638] Dye referred Clem for an evaluation with Dr. Sidhu in January 2016. [Tr. 649] Sidhu noted that Clem had decreased lumbar range of motion, but no gross neurological deficits and no signs of sciatic tension. [Tr. 649] Dr. Sidhu recommended that Clem use heat, perform exercises, and continue with the anti-inflammatory medication, as prescribed. *Id.*

Dr. Abdul Dahhan was the Claimant's primary care provider. [Tr. 477] Clem saw Dahhan for bilateral foot swelling and leg numbness. Dahhan performed a monofilament test and noted that sensation was intact. [Tr. 479, 483, 490] Dahhan also treated Clem for low back pain in May 2015. Dahhan reported that Clem had pain with lumbar flexion beyond thirty degrees, but his straight leg raise was negative and there was no tenderness of the paraspinous muscles. Ultimately, Dahhan diagnosed a lumbar sprain or strain and did not provide any intervention. [Tr. 586. 593, 602]

State agency physician Alex Guerrero, M.D., reviewed the Claimant's file in April 2015. [Tr. 88] After reviewing all of the medical evidence up to that point, Guerrero determined that Clem's allegations regarding his physical limitations were partially credible. *Id.* Ultimately, however, he concluded that Clem had no physical impairments which greatly reduced his ability to perform one or more basic work activities. *Id.*

Emily Skaggs, Psy.D., performed a consultative psychological examination in December 2014. [Tr. 501] Clem reported to Skaggs that, after contracting meningitis, it took two months to regain the ability to walk and that he had gained a significant amount of weight. [Tr. 501] He advised Skaggs that he had problems with depression because he was unable to do the things he used to do, such as play with his children. [Tr. 502] Skaggs observed that Clem's posture and gait were normal and that his motor activity was unremarkable. [Tr. 503]

Skaggs administered several tests to Clem, including the Wechsler Adult Intelligence Scale–IV ("WAIS-IV") and the Wechsler Memory Scale-IV. [Tr. 504-05] His full-scale IQ was 71, which falls within the borderline range. [Tr. 504] Skaggs determined that Clem's capacity to understand, remember, and carry out instructions toward the performance of simple, repetitive tasks was affected by his symptoms to a slight degree. [Tr. 507] However, she believed that his ability to tolerate the stress of day-to-day employment and to respond appropriately to supervisors and co-workers was affected to a marked degree. *Id.* Further, his ability to sustain attention and concentration was affected to a moderate degree. *Id.*

Jane Brake, Ph.D., reviewed Clem's file on behalf of the state in December 2014. [Tr. 61] Brake found Clem's allegations regarding his psychological limitations partially credible. [Tr. 64] She noted that Clem had never been referred for psychiatric treatment in the past. *Id.* Further, he reported that he helped his children get ready for school, managed bills, attended outpatient physical therapy, and watched television. *Id.* Brake opined that the low test scores produced during the evaluation with Skaggs were not consistent with the preponderance of the evidence. She concluded that Clem had the ability to concentrate and persist at simple, familiar tasks requiring independent judgment and involving minimal variations in two-hour segments. *Id.*

Michelle Bornstein, Psy.D., reviewed the file in March 2015. [Tr. 91] She opined that Clem's ability to maintain attention and concentration for extended periods was moderately limited, but that his allegations concerning these impairments were only partially credible. [Tr. 91-92] Like Brake, Bornstein cited Clem's lack of psychological treatment and his ability to perform functions such as bill management and child care. [Tr. 92] She agreed that Clem was able to perform simple, familiar tasks in two-hour segments. *Id.*

Clem submitted a psychological report prepared by Robert Spangler, Ed.D., who examined him at his attorney's request in April 2016. [Tr. 670-76] Spangler reported that Clem was able to recall words and numbers, but could not interpret common proverbs. [Tr. 671-72] Spangler administered the WAIS-IV and determined that Clem's full-scale IQ was in the borderline range. [Tr. 674-75] He noted that Clem's social skills were adequate and that he related well during the examination. [Tr. 673] He concluded, however, that "pace was inadequate as objectively tested." [Tr. 675] Spangler diagnosed Clem with "slow pace," and remarked that he was "not competitive." [Tr. 676]

The ALJ concluded that Clem had the following severe impairments: lumbar sprains and strains, neuropathy, and a history of bacterial meningitis with cerebrovascular events. [Tr. 12] Considering the evidence of record and Clem's testimony during the hearing, the ALJ determined that he had the residual function capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except

> [he] can frequently climb ramps and stairs; can occasionally stoop, kneel, crouch, and crawl; can never climb ladders or scaffolds; can never be exposed to unprotected heights or dangerous moving machinery; should avoid concentrated exposure to extreme cold and vibration; can understand and remember simple, routine instructions, but may need assistance from supervisors or coworkers with written instructions; can complete simple routine tasks in a normal amount of time with regular breaks every two hours; can

> occasionally interact with supervisors, coworkers, and the public; and, can adapt to occasional work place changes that are gradually introduced.

[Tr. 17] The ALJ determined that, although Clem could not perform any of his past work, there were jobs that existed in significant numbers in the national economy that he could perform. [Tr. 21-22] As a result, the ALJ determined that he had not been under a disability from May 31, 2014, through the date of the ALJ's decision. [Tr. 23]

### III. Standard of Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If a claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. §§ 404.1520(d),

416.920(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If he can, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider her RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. §§ 404.1520(g), 416.920(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

### A. Failure to Deem "Processing Speed" a Severe Impairment

Clem argues that the ALJ erred by failing to deem his alleged processing-speed impairment severe. [Record No. 11-1, p. 12] Establishing a severe impairment at step two is a *de minimis* hurdle and is intended to screen out totally meritless claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998). An impairment is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id.*

While the ALJ did not determine that Clem's information-processing limitation was severe at step two, he did find that Clem had severe impairments at that step. *See Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (upon the finding of at least one severe impairment, the ALJ must go on to consider limitations imposed by all impairments). Accordingly, the failure to characterize "processing speed" as a severe impairment is of little consequence here. Rather, the relevant inquiry is whether all impairments were considered in determining the Claimant's RFC. *Id.* (stating that error at step two is reversible only if the ALJ fails to consider the claimant's impairments in the remaining steps of the disability determination).

### B. ALJ's Consideration of Opinions Regarding Clem's "Processing Speed"

The ALJ went on to consider this alleged limitation in determining the RFC. [Tr. 15-16] Clem argues that the ALJ erred by failing to adopt the opinions of examining sources Skaggs and Spangler. [Record No. 11-1, p. 10] Both opined that Clem's ability to process information was slower than average, as demonstrated by his WAIS-IV score. [Tr. 504-07, 673-74] The ALJ gave "some" weight to Skaggs' opinion, concluding that her findings were

based primarily upon Clem's subjective statements. [Tr. 15] The ALJ gave marginal weight to Spangler's opinions because his conclusions regarding Clem's likely absenteeism from work and inability to relate to co-workers were not supported by the record. [Tr. 15]

The ALJ ultimately determined that Clem's mental impairment was "rare and largely situational" because regular treating and examining sources had never diagnosed him with a mental health problem. [Tr. 14] The ALJ assigned partial weight to the opinions of consulting sources Jane Brake, Ph.D. and Michelle Bornstein, Psy.D., who concluded that Clem had moderate difficulties in maintaining concentration, persistence, or pace. [Tr. 14, 61, 91] The ALJ adopted Brake and Bornstein's opinion that Clem could concentrate regarding simple tasks in two-hour segments. In reaching his conclusions, the ALJ found that Clem's allegations regarding the severity of his limitations were only partially credible. Despite his claims regarding his inability to concentrate, Clem reported driving, going out alone, and playing card, board, and video games. [Tr. 17-18, 242]

As an initial matter, it is unclear that the RFC is inconsistent with the opinion of Skaggs. Skaggs believed that Clem's ability to sustain attention and concentration was affected to a moderate degree. [Tr. 507] Spangler offered the conclusory assessment that Clem's pace was slow and "not competitive," but did not explain why he believed Clem's pace made him unsuitable to perform any job. [Tr. 676] The consulting sources agreed that Clem's ability to maintain concentration was limited to a moderate degree and recommended breaks every two hours. This accommodation is reflected in the RFC.

Assuming *arguendo* that the RFC is inconsistent with Skaggs' and Spangler's opinions regarding Clem's ability to process information, the ALJ did not err in partially rejecting the examining-source opinions. To determine whether an ALJ acted properly in disagreeing with

a medical source, the Court must determine the source's classification. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). ALJs are not required to treat all medical sources equally. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007). Acceptable medical sources are divided into three classes: nonexamining sources; nontreating (but examining sources); and treating sources.[1] *Id.* at 875. Generally, more weight is given to the opinion of an examining source than that of a source who did not examine a claimant. 20 C.F.R. § 404.1527(c). However, in certain instances, opinions from state agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012) (citing 20 C.F.R. §§ 404.1527, 416.927).

One such instance is where the state consultant's opinion is based on a review of a complete case record that was not available to the examining source. *See* SSR 96-6p, 1996 WL 374180, at *3. Here, there is no indication that Skaggs or Spangler reviewed Clem's record. Instead, it appears that all background information was provided by Clem or his mother. [Tr. 501-02; 670-72] And, as the ALJ noted, to the extent the limitations are more restrictive than those included in the RFC, they are inconsistent with the longitudinal record. For example, it does not appear that Clem was ever referred to speech, occupational, or any type of cognitive therapy following his bout of meningitis. Further, when Clem reported to the University of Kentucky Neuroscience Institute for a follow-up in August 2014, his physician reported (apparently based on Clem's statements), that he did not have any residual deficits from his strokes. [Tr. 471] The physician also noted that Clem's memory, attention

---

[1] These rules apply to claims filed before March 27, 2017. 20 C.F.R. § 404.1527.

span, and concentration were normal. [Tr. 472] Under these circumstances, substantial evidence supports the ALJ's decision to give greater weight to the opinions of the non-examining consulting sources.

C. **The Commissioner's Decision is Supported by Substantial Evidence**

Clem argues that the Commissioner's decision is not supported by substantial evidence but has failed to articulate a meaningful argument. Instead, he contends that the objective medical evidence "unequivocally documents" that he suffers from a litany of medical problems. [Record No. 11-1, p. 13] This may be true, but the Claimant has the burden of demonstrating that such impairments, either singly, or in combination, are disabling within the meaning of the Social Security Act. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); 20 C.F.R. §§ 404.1512, 416.912.

Clem argues that he is disabled based on low back pain, but the record lacks objective medical evidence indicating that it is severe. He does not appear to suffer from neuropathy related to his lumbar spine. [Tr. 472-73, 593] Diagnostic imaging revealed only mild degeneration and conservative treatment is all that has been recommended. [Tr. 619] Further, Clem indicated in his application for benefits that he was able to ride a lawnmower in thirty-minute increments for a total of up to one and one-half hours. [Tr. 243] Treatment notes from his neurologist at the University of Kentucky Neuroscience Institute indicate that he had recovered from the small strokes associated with bacterial meningitis as of August 2014. [Tr. 471]

And while the sources that evaluated Clem's mental state agreed that he had some limitations, the longitudinal record supports the ALJ's determination that they were not disabling. As previously discussed, the RFC adequately addresses the limitations assessed by

the state consultants. Accordingly, the ALJ's determination that Clem had not been under a disability since May 31, 2014, is supported by substantial evidence.

V.

Based on the foregoing analysis, it is hereby

**ORDERED** as follows:

1. Plaintiff Jeremiah Williams Clem's Motion for Summary Judgment [Record No. 11] is **DENIED**.

2. Commissioner Nancy A. Berryhill's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

This 24th day of January, 2018.

Signed By:
*Danny C. Reeves*  DCR
United States District Judge